21-64-19 and 23-62-94 Sulton v. Garland Ok. Alright. Mr. Piston. Good morning, your honors. Michael Piston upon behalf of the petitioner. Your honors, there are two fundamental reasons why this petition for review should be granted. First, the IJ abused his discretion by failing to consider whether, even if Mr. Sultan failed to establish past persecution, there was nevertheless a discernible chance, as required by DLO versus INS, that he might suffer persecution in the future as a member of the Bangladesh Nationalist Party, or BNP. Even if one does not consider Mr. Sultan's testimony, or that of any of his family, the affidavits of Muhammad Salim, the president of the Bangladesh Nationalist Party and the son of our union, and Mr. Muhammad Khamaruzm, the union council, and a guy by the name of Mahabub, all confirm that Mr. Sultan was in fact a member of the Bangladesh Nationalist Party. Therefore, all we need to show is that there was a pattern of persecution of members of the Bangladesh Nationalist Party. And that was shown quite clearly in the record. On pages 45 to 50 of our brief, we cite 20 separate incidents of persecution against the Bangladesh Nationalist Party, and that's only because of the necessary limits. Wouldn't he still have to show that there's a likelihood that he himself would be subject to persecution? In a pattern of persecution case, your honor, we just have to show that he's part of a group that's being persecuted. And the judge did not even consider this possibility. There is no discussion at all of whether or not Mr. Sultan was likely to suffer future persecution. I believe this is a clear abuse of discretion and the court should remand it on that basis alone. Can I ask a question just about timing in that situation? If we're talking about past persecution, then the touchstone for sort of country conditions evidence would be country conditions evidence that described the situation at the time of the flight, or at least at the time of the asylum hearing. If we're talking about a reasonable fear of future persecution, then am I right that the relevant time frame would be, I guess, the time of the hearing itself, right? What's happening in the country of origin at that time so that we can make a determination about what would be reasonable to fear upon return? Am I right about that just as a general matter? Well, certainly, theoretically, yes. But obviously, you cannot determine at the exact instant of decision what the situation is. You have to take into consideration what's been going on in Bangladesh ever since the Awami League took power over a 10-year period. And that was for longer. And that was a very consistent pattern of persecution of members of the Bangladesh Nationalist Party. And I believe the country condition papers cover the entire period up until the hearing. So are you saying it doesn't matter if he wasn't credible in testifying to past persecution? Absolutely. And that's what this court said in a case called Paul v. Gonzales, I believe. Paul v. Gonzales, 444 F. 3rd 148. An asylum claim based solely on evidence of a well-founded fear of future persecution is not necessarily foreclosed by the IJ's finding that the appellant's anecdotes of past persecution are not believable. And there's actually many cases to this effect. So that's one ground. But that's one reason for sending this case back. But the second is that any reasonable adjudicator would be compelled to conclude that the IJ did not properly examine the totality of the circumstances in making its credibility finding when the judge clearly misunderstood a central fact of those circumstances. That fact is the whereabouts of Mr. Sultan's wife from August 7th to August 14th, 2013. When you read the judge's decision, you can see that he's very heavily influenced by what he feels is Mr. Sultan's dishonest testimony on this court. He makes the point that Mr. Sultan stated eight different times that his wife came to DACA on August 8th, 2014. But according to the judge, she didn't come until May 25th, 2014. Now that is a complete misreading of the wife's statement. The wife's statement states very clearly that she came to DACA a week before her husband left the United States. The husband left the United States on August 14th. That means she came to DACA on August 7th, 2014. The judge completely missed this point. Well, I mean, he's asked, right, at the hearing, is it true that she lived in DACA continuously since that time, right, since August 2013? No, it's not true that she lived. And he says yes, and then the judge asks him, right – sorry, how can you get that wrong? Sultan says, I was confused. He says these events took place four years ago. It may not be that you're referring to them correctly, and the judge asks, did you communicate with your wife? And he says, no, I didn't discuss anything with her about this. And so Mr. Sultan's own explanation is that he – even though he spoke with his wife continuously from December 19th, 2013 to May 25th, 2014, he never asked where she was living, right? That's his explanation for why there was an inconsistency. First of all, Your Honor – And I take the point that it's possible to read the record and come up with a way to reconcile the statements. But why would any reasonable adjudicator be compelled to conclude that that was true if his explanation was not that there was a way to reconcile them? It's that he just didn't know. First of all, Your Honor, he didn't say that he didn't know where his wife was. There was a certain point when the judge confronted him with the false fact that – You never asked your wife where she was living for six months. Yeah, he never asked her. Hold on. Why not? I didn't know about this. The dates are the mistake right now that I'm making about the dates. I didn't know about that, so I did not ask her where she was, or it just didn't come up in the conversation. Your Honor, if we're going to hold – He's not saying that he didn't know where she was. Your Honor, if we're going to hold people to their words, then we have to hold them to their exact words and not the words that we think they said. Okay, he was asked if he ever asked his wife where she was. He wasn't asked if he knew where she was. This is a person who's speaking through a translator who is answering the questions that he's being asked. Okay, if the judge said, did you know where your wife was? He should have asked him that question. He said, did you ask your wife? But if the question is, you said she moved on one date. She said she moved on another date, and his answer is, I made a mistake. And his explanation for why he made a mistake was because he never asked her on the phone. He is saying he didn't know where she was. That's the mistake part. And that the reason he made a mistake and lacked the knowledge was because he never asked her about it, right? Your Honor, he said he might have made a mistake. That's what he said. And this Court has ruled in other cases where the person says they might have made a mistake. That's not admitting that they made a mistake. And I think the case is called Gao. It was recited in our first brief. So go back to the standard here, right? The INA says the IJ can rely on any inconsistency in the testimony, right? And that we can second guess it only if any reasonable adjudicator would be compelled to conclude that he was credible or that this was not an inconsistency. Yes. So isn't it possible to read this exchange of him saying, well, I made a mistake. I didn't know when she moved, and the reason I didn't know was because I never asked her the whole time I spoke to her during that period. To do that, you'd have to reverse your decision in Gao, and that can only be done by an NVAC case. Which decision? It was Gao. I believe it's called Gao. It was in my first opening brief. Is it Gao? I think it's called Gao. It was in my opening brief, and it's a case where the person said, I might have been wrong. And this Court said that that is not an admission it was wrong. And it was actually under circumstances which were very similar to this one because in Gao, they were confronting him with false facts. The judge misrepresented the record to him. And in this particular case, the judge is also confronting him with false facts. He's confronting him with the claim that your wife did not live in DACA between August 7th and August 2014. This is a guy who's never testified in court in his life. If the judge tells him something is true. But why can't the judge believe since he's asking him for clarification that if he doesn't respond by saying, no, in fact, she went there and then she came back and then she went again. Because he's not a lawyer, Your Honor. Because he's not a lawyer. He doesn't have the record. No witness is actually a lawyer. The statute says we can rely on inconsistencies in testimonies among the witnesses and among petitioners. There's no expectation that they'd be lawyers. I simply maintain, Your Honor, that if you look at the case that I think is called Gao. But if you read our brief, our opening brief, you will see that this court has addressed this issue and has found that where the person says I might have been mistaken, that is not an admission that they are mistaken. What about the contradiction about the passport? Isn't that just a contradiction? The idea that he says on the one hand that it was taken from him by an agent in Bolivia and on the other hand that it was damaged and that's why he doesn't have it. Your Honor, that may well have been a basis for an adverse credibility hearing. However, this court has held in Lee v. McCausey that where there were three reasons for upholding the adverse credibility finding, but three other reasons cited by the judge for the adverse credibility holding did not support that the judge, that they were not confident that the judge would come to the same credibility conclusion under these circumstances and therefore they would remand the case back to the immigration judge. And in fact, this court has even made it. That was a valid basis for an adverse credibility determination. But you think if we send it back and that was the only one remaining, the judge might decide otherwise, that in fact he was credible? The judge is required to make a credibility finding under the totality of the circumstances. The totality of the circumstances includes that the judge was very, very wrong about where Mr. Sultan's wife was between August 7th and August 2, 14th. And if you read the judge's decision, you'll see that this was really a central point of his case. If the judge just wanted to rely upon the passport issue, why wouldn't he just stop there? Why did he have to go into emphasizing the respondent? I get this all the time where the immigration judge identifies multiple inconsistencies and we say, well, one is sufficient. And so we don't send it back just because we think, you know, another one is not a clear inconsistency. Well, that's not what this court ruled in Lee v. Mikhazy. In Lee v. Mikhazy, there were six basis for an adverse credibility finding. The judge said three, the court said we accept three of them, but we're still going to send it back because we don't accept the other three. And in fact, in another case called Hu v. Holder, the court set the bar even higher. They said unless there is overwhelming evidence that the court would have, that the judge would have come to the same conclusion, had he known all the true facts, we're not going to, we're not, we're going to remand this. So I don't think that anybody could say that there is overwhelming evidence that the judge would have decided the credibility issue solely on the issue of the passport. Not when he had, not when in Lee, there were three reasons for finding the guy. If in fact he had just said I rely on the passport and then said nothing else, you would say that that was a defensible decision and it should not be sent back. I'm not sure that the judge would have found him credible under that, under that case, under those circumstances. The judge doesn't have to find somebody incredible just because he finds some discrepancy in the testimony. I think if that was the only problem here, I seriously doubt that the judge would have found him incredible. I think the judge really found him incredible because of his incorrect idea that there was a contradiction between his wife's affidavit and his testimony. That's why the judge found him incredible. Okay, thank you, Mr. Piston. Thank you. We'll hear from you again, but let's turn to the government. Ms. Aldana. Good morning, your honors. May it please the court, Sir Aldana on behalf of the Attorney General. Counsel, you've got to yell. Okay. I mean, actually, we can lower the, the CSO will help you lower the podium there. Yeah. Is that good? Can you hear me? Yell at me. Okay. Sir Aldana on behalf of the Attorney General. The government asked the court to deny the petition for review as substantial evidence supports the agency's determination, and the record does not compel an opposite conclusion. Here, there were two primary inconsistencies, the first being the passport issue. Petitioner's explanation to that passport inconsistency was that there were interpretation issues during his credible fear interview. He stated this for the very first time. He did not mention it during his credible fear interview. The agency was reasonably unpersuaded by this explanation, as the record does not indicate any issues. In fact, on page 359 of the record, which is page one of the credible fear interview worksheet in sections 1.20 and 1.21, it indicates or delineates an area for the officer to identify if there are any issues with the translator or if there's a bad phone connection line there, and that was not indicated. So the agency reasonably relied or reasonably determined that that explanation was unpersuasive. In addition to that inconsistency, the Weiss letter. The Weiss letter was explicit. She explicitly stated that she visited DACA in August of 2013, and then I believe the next paragraph down, she explicitly states that she moved to DACA in May of 2014. This is an undisputed inconsistency to petitioner's testimony that she moved in August of 2013. Petitioner reiterated this approximately five times and confirmed it when directly asked by the DHS attorney. Regarding petitioner's well-founded fear of future persecution. Before we get to that, can I ask about this? So it's possible to read the letter as saying she came to visit and then she moved later. Is that a way to reconcile his testimony with what she says in the letter? No, Your Honor, because it's explicit. Two very distinct events happening. One is a visit in which she returned, and one is a move in which she remained there as her residence. And as Your Honor has pointed out, when DHS attorney explicitly asked the petitioner, did she remain in DACA in August of 2013 as her city of residence, the petitioner confirmed that that was correct. So therefore, it's a blatant mis- Can I ask another question? His explanation for why he had inconsistent testimony was he said that he didn't know and he never asked her about when she moved. And the agency seems to not – to find that very implausible. Is that another basis for the adverse credibility determination? Like if he's providing testimony that the IJ finds implausible, could he rely on that as well as a reason to find it not credible? Yes, Your Honor. It's not itself an inconsistency, but it's the explanation of an inconsistency that he offers. Yes, Your Honor. That's part of the totality of the circumstances of the adverse credibility determination, whether or not the explanation can reconcile the inconsistency. And in this case, it did not. It's implausible to believe that her husband would not ask her whereabouts, especially when she was allegedly facing life-threatening situations. Therefore, the agency reasonably relied on that and determined that that was implausible. Regarding the well-founded fear of future persecution and cat claims, these claims are based on the same factual predicate that were found incredible. Therefore, the agency reasonably denied those applications. It should be noted that the agency also made a corroboration finding, which was not fully exhausted and not contested before the board. So to state that the letters of the brother or the wife's letter are establishing petitioner's membership, that would be to contest the corroboration or the persuasive value of these documents, which the petitioner did not fully exhaust and did not present to the board. So the court should not address that in the first instance. You're saying it's a well-founded fear of future persecution. Even if he gives up on having past persecution, you're saying he can't establish a well-founded fear of future persecution because he's relying on the same evidence to establish his membership in the political party, and so he doesn't have evidence that he even is in the class that would be persecuted? Correct. Is that the argument? Yes, Your Honor. So the adverse credibility determination extends to the affidavits? Correct. It extends to the corroboration because the immigration judge determined that the persuasive value of those documents were diminished because they were not contemporaneous and the affidavits did not have first knowledge of the alleged. But Piston's argument that there's all this evidence about country conditions evidence, there's country conditions evidence about what goes on in Bangladesh, and the IJ should have relied on that to think about future persecution. Correct, Your Honor. So that's independently corroborated evidence. But, however, Petitioner cannot establish his eligibility solely on independently corroborated evidence because he cannot establish subjective and objective fear of future harm or torture. Counsel identified this court's decision in Paul. However, Paul is distinguishable in this case because in that case the immigration judge had explicitly discredited Petitioner's past persecution accounts, however credited the Petitioner's Christianity practice or his current membership. And the immigration judge did not do so in this case. The immigration judge completely discredited the entirety of the Petitioner's testimony. Can I go back to your prior point? Because I'm struggling with it a little bit. The IJ made an adverse credibility determination as to the individual seeking. Correct. There were corroborating documents that the IJ found insufficient to overcome that adverse credibility determination, especially insofar as the report of the events that supported the asylum claim were not based on firsthand knowledge of being present. They were essentially repeating what he told them. Correct. I don't understand the notion that the adverse credibility determination, therefore, extends to those documents in the sense of ruling them to be non-credible for the more limited purpose of establishing his membership and participation in the party as opposed to the instances of past persecution that underlie his claim for past persecution. Can you explain why that would follow? It's not so much that the adverse credibility extends to it. It's so much that Petitioner's corroboration, the persuasive value of those documents were diminished. Right, as to the allegations of past persecution. But as I'm understanding the argument is, even if you don't believe me that all these things happened in the past, if you look at the country conditions evidence, people in my circumstance face a significant risk of persecution from the ruling party. And if you have doubts about what my circumstance is, don't rely on my testimony. You can rely on the description of these affidavits. You haven't said they're not credible. You've said that they didn't resurrect my claim as to the past events because they were essentially not based on personal knowledge. Why isn't that an – I mean, it may be that there's not enough by way of country conditions evidence, but why is that determined by the adverse credibility determination? It's not the adverse credibility. It's the persuasive value of the document. So the immigration judge makes two explicit findings, the lack of corroboration and the lack of persuasive value of the document. So the document's in their entirety, not just portions of it. But the persuasive value was described with respect to the particular purpose for which they were being considered, namely, did these past events happen? And the I.J. is saying, well, you're just telling us what he told you happened. You weren't there. You're not describing it in personal knowledge. That doesn't have persuasive value. But now the argument is, but there's a whole separate purpose that the I.J. didn't really grapple with for which these affidavits are probative. I guess I don't understand why the lack of persuasive value tells us anything about their relevance to this forward-looking claim. Well, because the immigration judge would have to be persuaded that the entirety of the document was valid and was truthful. But because the immigration judge is questioning the entirety of the documents, then everything, all the information contained within it is in question. But the I.J. didn't say they weren't. There's lots of reasons for rejecting testimony. One is that they're being untruthful, right? I think you're lying. The other is, oh, you didn't have personal knowledge and you're not here for cross-examination, so I'm not going to give weight to your testimony. It doesn't mean I think you're lying, right? It just means that your testimony doesn't carry enough weight to override my adverse credibility determination. Isn't that what the I.J. did here? It didn't say that there was no credibility to these documents. It just said that for the purpose they were offered, they didn't accomplish it. Well, the purpose they were offered was also to establish his membership, and so the immigration judge found that they were not persuasive in that aspect either. I will also add, Your Honor, that this pattern of practice argument was not brought to the board. It was only mentioned in the petitioner's declaration in his motion to reopen to the board. But, again, this is also an issue that was not fully exhausted. So you're saying that this argument that even if I didn't suffer past persecution, I should still be able to establish future persecution is unexhausted and so we shouldn't consider it? The pattern of practice argument has not been. It's unexhausted in the underlying claim. Wasn't it the argument- Correct. Do we have a motion to reopen here? Yes, there's also a motion to reopen regarding ineffective assistance of counsel. And that's when it was first brought up within the declaration of the petitioner, but not in a brief to the board. But you wouldn't get a reopening based on a new argument that you thought of. You'd get a reopening maybe based on ineffective assistance of counsel, but not on this argument. Yes, Your Honor, but we would argue that there was not enough prejudice for- To establish future, well-founded fear of future persecution, you have to show subjectively and objectively that there's a well-founded fear, right? Yes, Your Honor. Subjective- So if the immigration judge doesn't think he's credible about having suffered all of this persecution, he wouldn't think he's credible about the risk of future persecution. That's correct, Your Honor. Okay. All right. Thank you very much. Ms. Aldana, we'll turn back to Mr. Piston on rebuttal. Okay. First of all, Your Honor, exhaustion is a waivable claim, and they did not raise the argument of exhaustion as to the failure to find future persecution. Second of all, the evidence that Mr. Sultan was a member of the BNP did not only come from his family. It also came from the three individuals I mentioned in my previous brief. There's Mr. Saleem on page 605 of the record, Mr. Kamarazum on page 601 of the record, and Mahabub on 595. And none of these people were mentioned, none of these affidavits were even mentioned in the judge's decision, so there was certainly no rejection of the judge's decision by that. The judge rejected, contrary to what the government- Well, you have to show a subjective, well-founded fear of future persecution. I.J. thinks he's manufacturing these allegations of persecution. Isn't he also claiming you don't really have a genuine fear of persecution? The relatives affidavits were rejected only because they did not have firsthand knowledge of the specific incidents they testified to. They also testified to the fact that he was afraid of being persecuted, and there was no rejection of their testimony on that particular point. I don't know where the government comes up with the idea that the judge rejected their affidavits in total, but it's not in the court's decision. I'd also like to mention to the court that the decision I was referring to in my earlier brief argument was Gao v. Board of Immigration Appeals, 482 F. 3rd. 122, and it states that Mr. Gao's two comments, notably, maybe I made a mistake, do not amount to an admission that he testified inconsistently at the 1999 hearing regarding his first child's price of birth. If there's no further questions, I thank the court. Thank you very much, Mr. Episton. The case is submitted.